UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ANTHONY DEWAYNE LESTER, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 3:12-CV-347 |
| § | |
| RICK THALER, *et al*, § | |
| § | |
| Respondents. § | |

### MEMORANDUM AND ORDER

Petitioner Anthony Dewayne Lester (TDCJ# 1614571) seeks habeas corpus relief under 28 U.S.C. § 2254, challenging his 2009 conviction for intoxication manslaughter in a Galveston County, Texas. Respondent has filed an answer asking this Court to deny petitioner's application. Having considered the pleadings, the record, and applicable law, this Court denies Lester's petition.

### I.   Background

On November 20, 2009, a jury in the 56th Judicial District Court of Galveston County, Texas, sentenced Lester to twelve years imprisonment for the crime of intoxication manslaughter. The Court of Appeals for the First District of Texas affirmed the judgment. *Lester v. State*, 01-10-00026-CR, 2011 WL 148118, at *1 (Tex. App. Jan. 13, 2011). The Texas Court of Criminal Appeals refused Lester's petition for discretionary review. *Id*.

On October 5, 2011, Lester filed a state petition for writ of habeas corpus challenging his conviction, which the Texas Court of Criminal Appeals dismissed. Docket Entry No. 9-34 at 3. On March 30, 2012, Lester filed a second state petition for writ of habeas corpus, which was also denied. Docket Entry No. 9-41 at 2. On November 9, 2012, Lester filed this federal petition.

In his federal petition, Lester alleges that:

1. His conviction was the result of an illegal search and seizure.
2. He was denied effective assistance of trial counsel because of trial counsel's:
    a. failure to submit evidence favorable to petitioner;
    b. failure to file a motion to suppress an involuntary blood sample;
    c. failure to properly cross examine state witnesses;
    d. failure to question witnesses before trial;
    e. failure to investigate the facts of the case;
    f. failure to "have accident reconstruction performed";
    g. advising petitioner to sign a waiver allowing the state to introduce prior D.W.I. convictions;
    h. failure to bring the trial court's attention to the fact that another vehicle crashed into the site of his accident.
3. He was denied effective assistance of appellate counsel.
4. No hearing occurred on the motion to suppress in violation of the Texas Code of Criminal Procedure.
5. He Received an Illegal Sentence.

Fed. Writ Pet. at 6-7; Pet.'s Memo. 1-5.

**II. Standard of Review**

The Court reviews Lester's petition under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. When a state court has adjudicated a claim on the merits, federal habeas relief cannot be granted unless the state court decision (1) was contrary to clearly established federal law as determined by the United States Supreme Court; (2) involved an unreasonable application of clearly established federal law; or (3) was based on an unreasonable factual determination in light of the evidence

presented. *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011)(quoting 28 U.S.C. § 2254(d)); A summary denial of claims by the state habeas court is still considered an adjudication on the merits. *See id.* at 784-785.

State court determinations on questions of law and mixed questions of law and fact receive deference unless they are contrary to, or are unreasonable applications of, clearly established federal law. 28 U.S.C. § 2254(d)(1). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the United States Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 409, 120 S. Ct. 1495, 1521, 146 L. Ed. 2d 389 (2000). In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411.

The AEDPA affords deference to a state court's resolution of factual issues. A federal court must presume that the state court's underlying factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 330-331 (2003). This deference extends to both express and implicit findings of fact. *Garcia v. Quarterman*, 454 F.3d 441, 444-445 (5th Cir. 2006) (citations omitted). The presumption of correctness is especially strong when the trial court and

habeas court are the same. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (citations omitted).

### III. Statement of Facts

The First Court of Appeals of Texas summarized the evidence presented as follows.

Kyle Zunker testified that at approximately 11:00 p.m. on August 15, 2007, he, while driving his car east on Highway 646, noticed a silver Honda traveling east "normally down the road" in front of him. After he explained that 646 is a two-lane road, which is not divided by a center lane or median, Zunker noted that he saw a white Lexus traveling west in the lane of oncoming traffic. "[R]ight before the white Lexus was about to pass the silver Honda, it crossed over into the lane that the silver Honda was in," and collided with the Honda. Zunker described the movement of the Lexus as "very sudden," "a sudden jolt," and it entered the lane of oncoming traffic "at the last possible second." After Zunker stopped his car and called for emergency assistance, he approached the Lexus from a distance. He believed that the driver was unconscious, but he did not get close enough to look inside the car at the driver.

Houston Police Officer S. Antley testified that on August 15, 2007, he was dispatched to the scene of the collision. When he arrived, Antley saw a gray Honda, "stationary in the middle of the road" facing northeast, and appellant's car, a white Lexus, "on the grassy part off the roadway facing north." The Honda was in "pretty bad" condition, as the "front end had been pushed all the way in" to the passenger compartment. The complainant, Donna Banduch–Lawson, was "pinned in by the engine," and Antley was unable to remove her from the car. Antley then approached the Lexus where he saw appellant "slumped over in the driver's seat" and vomit "splattered all across the front windshield." He detected a "very strong odor of alcoholic beverage" and noted that appellant was "conscious, but not alert," and he "kept trying to move" and "mumble something." An emergency medical technician, who inserted a breathing tube for appellant, informed Antley that he could "smell the alcoholic beverage coming out of the tube." Antley then interviewed Zunker about his observation of the collision. Based on the "position of the vehicles" and what Zunker had told him, Antley explained that "a combination of things" led him to believe that appellant had "lost the normal use of his mental and physical faculties" and this caused the collision.

Later that night, Officer Antley picked up a blood sample kit from a police station and went to Memorial Hermann Hospital, where emergency services personnel had taken appellant. Although appellant was unconscious and unable to respond to his request, Antley read to appellant the statutory warnings that peace officers are required to read to all persons arrested for driving while intoxicated and he requested a specimen of appellant's blood. Antley noted on the appropriate form that, "Subject refused to allow the taking of a specimen and further refused to sign below as requested by this officer." Antley then requested that a nurse draw appellant's blood, and, after obtaining the

specimen, Antley sealed it in a container, signed the container, and transported it to the police station for submission to a crime lab for analysis.

Claire Flosi, a registered nurse at Memorial Hermann Hospital, testified that on August 16, 2007, she was the nurse on record for appellant. She explained that, as a matter of routine, she drew blood from appellant for a preliminary examination, and although she drew the blood, she did not provide any test results to Officer Antley because that is "clearly" a violation of the Health Insurance Portability and Accountability Act ("HIPAA"). Officer Antley presented paperwork to Flosi for a "mandatory blood draw for law enforcement purposes," and she drew the blood in a "sanitary" place and gave a vial of blood to Antley.

Robert Prince, a Texas Department of Public Safety forensic scientist, testified that he received the vial containing appellant's blood, performed an analysis on the blood sample, and determined that appellant's blood-alcohol concentration was 0.21. The trial court instructed the jury that the results of Prince's test were "for the limited purpose of showing that the individual who was tested had ingested alcohol only at some point before the time of the test."

*Lester*, 2011 WL 148118 at *1-*2.

## IV. Discussion

### A. Illegal Search and Seizure

Lester argues that the blood sample taken from him in the hospital was a violation of his Fourth Amendment rights because he was not under arrest at the time the blood sample was taken. In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the Supreme Court held that federal courts have no authority to review a state court's application of Fourth Amendment rights in habeas corpus proceedings unless the petitioner was denied a full and fair opportunity to litigate the claims in state court. "In the absence of allegations that the processes provided by a state to fully and fairly litigate Fourth Amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of Fourth Amendment claims on their merits, *Stone* forecloses review." *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006) (citing *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980)). "Full and fair consideration requires consideration by

the fact-finding court, and at least the availability of meaningful appellate review by a higher state court." *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977).

In the present case, the trial court considered and rejected Lester's Fourth Amendment claims, Docket Entry No. 9-14 at 46, and the appellate court gave them serious and comprehensive consideration. *Lester v. State*, 01-10-00026-CR, 2011 WL 148118 at *5-*7 (Tex. App. Jan. 13, 2011). "Underlying *Stone* is the conviction that state courts are as competent as federal courts in insuring that federal constitutional rights are protected." *Id*. at 1215. "That premise is obviously destroyed if a federal court reaches the merits in a Fourth Amendment habeas case simply because it believes the state courts decided the issue incorrectly." *Swicegood v. State of Ala.*, 577 F.2d 1322, 1324-25 (5th Cir. 1978). Furthermore, Lester has failed to allege that Texas routinely or systematically prevents the actual litigation of Fourth Amendment claims on their merits. This court notes that recent Texas precedent may warrant the reexamination of Lester's motion to suppress, but *Stone* makes clear that this is not the venue for such a reexamination. See *Douds v. State*, 14-12-00642-CR, 2014 WL 2619863 (Tex. App. June 5, 2014). Accordingly, Lester's claim fails.

### B. Ineffective Assistance of Trial Counsel

An ineffective assistance of counsel claim previously rejected by a state court is evaluated under a "double deferential" standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Under the first level of deference, a petitioner must demonstrate that (1) his attorney's representation was so deficient under an objective standard that the attorney was not functioning as the counsel guaranteed by the Sixth Amendment and (2) the petitioner's defense was prejudiced as a result of the attorney's deficiencies. *Strickland v. Washington*, 466 U.S. 668, 667 (1984). The second level of deference is that afforded under the AEDPA, requiring this court to afford deference to the state court's determination of the ineffective assistance of counsel claim

unless it was contrary to, or an unreasonable application of the *Strickland* standard.  *See* 28 U.S.C. § 2254(d)(1).

Under the first prong of the *Strickland* test, a court's review of the trial attorney's performance is "highly deferential."  *Strickland*, 466 U.S. at 689.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that the counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome a presumption that, under the circumstances, the challenged 'might be considered sound trial strategy.'" *Id*.  (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  "Every effort [must] be made to eliminate the distorting effects of hindsight." *Id*. Under the second prong, the defendant has the burden to "affirmatively prove prejudice." *Id*. at 693.  "The defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id*.

### a. Failure to Submit Evidence Favorable to Petitioner

Lester argues that trial counsel failed to submit evidence favorable to him including: (1) a probable cause affidavit showing inconsistent dates with other police forms (2) Police Report 07-4273 revealing conflicting witness testimony (3) a probable cause affidavit showing that HIPPA was violated (4) a police report on the weather (5) Police Report 07-4274 showing that another crash contaminated the scene, and (6) a DIC 24 form confirming that Lester refused to provide a blood sample.

In an affidavit, Lester's trial counsel, Michael Pena, responded to each of Lester's allegations regarding Pena's performance.  Docket Entry No. 9-42 at 21.  With respect to complaints that he did not submit a probable cause affidavit showing inconsistent dates, a

probable cause affidavit showing a HIPPA violation, and a police report showing the weather at the time of the accident, Pena responded that none of the facts shown by those documents was in question at trial. Docket Entry No. 9-42 at 26-27. The date of the accident was not contested at trial, witness testimony revealed the same information as the affidavit showing a possible HIPPA violation, and photos taken of the crash site soon after the accident showed the weather at the time of the accident. Docket Entry No. 9-43 at 15, No. 9-22 at 49, No. 9-23 at 18. Given that none of the documents revealed information not in the record at trial, Lester has not shown that failure to submit these documents as evidence was prejudicial to his defense.

In response to the complaint that Pena failed to submit the police report showing that a second accident occurred after Lester's accident, Pena responded that together, he and Lester made the decision that such information could prejudice the jury against Lester and did not substantially benefit his defense. Docket Entry No. 9-35 at 52. Lester has failed to overcome the presumption that such actions "might be considered sound trial strategy." [1]

Pena did not respond to the claim that he did not submit Police Report 07-4273 which allegedly showed an inconsistency in witness testimony that was used to convict him. The Police Report describes details of the accident including the mention of statements from a key prosecution witness, which are not inconsistent with the witness's statements at trial. Docket Entry No. 9-40 at 45. After examining the Police Report and the trial record, this court has determined that the Police Report does not substantiate Lester's claim and that not submitting it "might be considered sound trial strategy." Moreover, Lester has failed to show that the failure to submit the Police Report prejudiced his defense.

---

[1] Because of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstnaces, the challenged action might be considered trial strategy." *Feldman v. Thaler*, 695 F.3d. 372, 378 (2012) (quoting *Strickland*, 466 U.S. at 689.

In response to Lester's complaint that Pena did not submit a DIC 24 Statutory Warning Form showing Lester's refusal to submit a blood sample, Pena responded that the form was not a basis for the suppression of a mandatory blood draw at the time of Lester's trial. Docket Entry No. 9-35 at 105. Nor was the existence of the form contested at trial. Lester has failed to show that failure to submit the form prejudiced his defense or overrode the presumption that such actions "might be considered sound trial strategy".

### b. Inadequacy of Motion to Suppress

Lester argues that Pena was deficient in his treatment of a motion to suppress the involuntary blood sample. This allegation is unclearly stated in Lester's federal petition, but in his state petition Lester alleged that trial counsel failed to file a motion to suppress the involuntary blood sample. Docket Entry No. 9-41 at 21. This allegation is simply false, given that the First District Court of Appeals discussed Lester's motion to suppress and found that there was evidence to warrant the involuntary taking of his blood given the amount of evidence showing that Lester was intoxicated at the time of the collision. *Lester v. State*, 01-10-00026-CR, 2011 WL 148118 at *5-*6 (Tex. App. Jan. 13, 2011). Lester has not defeated the strong presumption of correctness of the factual findings made by the lower court. Docket Entry No. 9-41 at 36. And, he has failed to show that any action taken by his counsel in regard to a motion to suppress was prejudicial to his defense.

### c. Waiver Allowing State to Disclose Prior D.W.I Offense

Lester argues that Pena coerced Lester into signing a waiver that allowed the State to disclose a prior D.W.I. conviction in the punishment phase of his trial. Pena responded that the state was likely to win admission of the prior convictions, and that he and Lester decided, together, that "it would be best to stipulate to the prior convictions." Docket Entry No. 9-15 at

87. Again Lester has failed to overcome the presumption that his attorney's actions might be considered sound trial strategy. This claim has no merit.

### C.  Failure to Exhaust Claims 3 and 4

The court finds that the highest Texas state court has not considered the merits of claims 3 and 4 raised in this federal habeas petition; therefore, the claims must be dismissed. Under the AEDPA, a prisoner seeking federal habeas relief must have exhausted available state court remedies with respect to every claim raised in the federal petition.  28 U.S.C. § 2254(b)(1); *Sonas v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995).  In Texas, a criminal defendant may challenge a conviction by (1) filing a direct appeal followed, if necessary, by a petition for discretionary review in the Texas Court of Criminal Appeals and (2) filing a petition for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is transmitted to the Texas Court of Criminal Appeals once the trial court determines whether findings are necessary.  *See* Tex. Code Crim. Proc. Art. 11.07 § 3(c).  Thus, Texas "[h]abeas petitioners must exhaust state remedies through one complete cycle of either state direct appeal or post-conviction collateral proceedings."  *Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004).

Claims 3 and 4 asserted in Lester's petition have not been exhausted because he did not raise them in his direct appeal or his state habeas application.  Accordingly, these claims are subject to dismissal for failure to satisfy the exhaustion requirement.

### D. Illegal Sentence

Lester argues that his sentence is illegal because Officer Jake Busard of the League City Police Department submitted a probable cause affidavit with inaccurate dates.  In support of this argument, petitioner cites *Ex parte Adams*, 768 S.W.2d 281 (Tex. Crim. App. 1989).  In *Adams*, a defendant was granted a new trial after a key witness was found to have falsely identified the

defendant after encouragement by the police, then was hidden by the prosecution to prevent her from recanting her testimony. *Id.* at 286-287. The Court of Criminal Appeals of Texas found that the errors denied the defendant's right to due process and ordered a new trial. *Id*. at 294.

The present case is not comparable to *Adams*. In particular, the court in *Adams* found it decisive that the factual misrepresentations were likely to be prejudicial to the defendant's defense, while the actual facts of the present case are not contested. "A misrepresentation made in a probable cause affidavit will not invalidate a warrant so long as a sufficient basis exists for the warrant's issuance once the inaccurate statements are omitted." *United States v. King*, 162 F.3d 93 (5th Cir. 1998). Given that the only inaccuracy Lester alleges on the affidavit is the date of the offense, a sufficient basis exists for the warrant's issuance once the inaccurate statement is omitted. Accordingly, this claim is without merit.

## V. Certificate of Appealability

Under 28 U.S.C. §2253, a petitioner must obtain a certificate of appealability before he can appeal the district court's decision to dismiss his petition. This Court will grant a certificate of appealability only if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make a substantial showing, a petitioner must demonstrate that issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. *Lucas v. Johnson*, 132 F.3d 1069, 1073 (5th Cir. 1998). For the reasons set forth in this Memorandum and Order, the Court concludes that Lester has not made a substantial showing of the denial of a constitutional right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). Accordingly, a certificate of appealability will not issue.

## VI. Conclusion

For the foregoing reasons it is **ORDERED**:

1. The petition for writ of habeas corpus is **DISMISSED** with prejudice.

2. A Certificate of Appealability is **DENIED.**

3. All pending motions are **DENIED.**

SIGNED on this 20th day of August, 2014.

_____
Kenneth M. Hoyt
United States District Judge